**BEALMEAR v. BEESON et al.**

No. 21908.

Kansas City Court of Appeals. Missouri.

On Motion for Rehearing Jan. 11, 1954. Nov. 2, 1953.

James Glenn, Macon, L. F. Cottey, Lancaster, for appellant.

John R. Hughes, Macon, Jayne & Jayne, Kirksville, Edwards, Hess & Collins, Macon, for respondents.

CAVE, Presiding Judge.

Plaintiff's petition was in two counts; the first count contested the validity of the will of Alfred L. Bealmear, and the second count sought to enforce an oral agreement to devise all of the property of Alfred Bealmear to plaintiff Russell O. Bealmear. The defendants are all the heirs and legatees of Alfred Bealmear, deceased, and the executor of his estate. When the case was called for trial plaintiff dismissed the first count and amended the second count by interlineation. The defendants proved the will of Alfred Bealmear and judgment was entered admitting the will to probate. Thereafter the defendants filed a motion to dismiss the second count for the reasons: (a) that the amended petition did not state a claim upon which relief could be granted; and (b) that the plaintiff was not a resident of Missouri and had not filed security for costs as required by Section 514.010 RSMo 1949, V.A.M.S. In due time the court sustained this motion and dismissed the petition without assigning any specific ground therefor. Plaintiff appealed.

Defendants have filed in this court a motion to dismiss the appeal or to affirm the order of dismissal for the reason that plaintiff was at the time of filing his suit and is now a nonresident and failed to give security for costs in the trial court or in this court. Attached to the motion are affidavits of nonresidence and that security for costs have not been filed in either court.

Section 514.010, supra, provides that "In all actions * * * in all civil cases when the plaintiff * * * shall not be a resident of this state, the plaintiff * * * shall, before he institutes such suit, file with the clerk of the court in which the action is to be commenced * * *" bond for costs. If this is not done "the court, on motion, may dismiss the same, * * *."

The precise question presented by this motion is: Does Section 514.010 apply to an appeal by a nonresident plaintiff where, within due time in both the trial and appellate courts, the defendants have filed a motion to dismiss on the ground that plaintiff is a nonresident and has not posted security for costs? It is conceded there are no Missouri decisions disposing of this precise point.

There is no statute authorizing an appellate court to require a plaintiff, as an appellant, to give security for costs before an appeal can be lodged in the appellate court unless Section 514.010 is applicable. We think that statute does not authorize an appellate court to require a deposit of security for costs before a nonresident can perfect his appeal. Defendants rely on decisions of other states which have construed similar statutes to authorize an appellate court to dismiss an appeal if the nonresident fails to give security for costs. But those cases are not persuasive because they are founded on the theory that an appeal by "A Writ of Error is considered as a new action, * * *". Roberts v. Fahs, 32 Ill. 474; Garrett & Bibb v. Terry, 33 Ala. 514; Willoughby v. George, 4 Colo. 22. The filing of notice of appeal is not the commencement of "a new action" in this state. It follows that this court cannot dismiss the appeal because the plaintiff, appellant, a nonresident, has not filed security for costs herein.

. That leaves the question whether the general order of the trial court sustaining defendants' motion to dismiss should be affirmed on the ground that plaintiff failed to deposit security for costs prior to the order of dismissal. There is nothing

in the order or in the record to indicate on which ground the court sustained the motion. There is no allegation in the petition and no evidence in the record to the effect that plaintiff was a nonresident at the time of filing his suit. The motion to dismiss was not verified and therefore did not prove itself. Thus it will be presumed that the court sustained the motion on a ground properly before it. We do not decide whether the trial court could or should dismiss the petition if it is properly brought before it that plaintiff has not complied with Section 514.010.

The other ground upon which the court could, and no doubt did, sustain the motion to dismiss is that the petition did not state a claim upon which relief could be granted. It must be kept in mind that the second count was brought in equity, recognizing the situation was such that the ordinary principles of statutory or common law would be inadequate.

Because of the various attacks made against the petition we copy the material part thereof as follows:

"For a second count and another cause of action, plaintiff states:

"1. That Alfred L. Bealmear, now deceased, was lawfully married to Elizabeth Davis Bealmear on or about the ...... day of August, 1891, and that this plaintiff was born of that marriage on or about the 9th day of February, 1893; that thereafter, in the year 1894, at a time when this plaintiff was an infant of the approximate age of one year, the said Alfred L. Bealmear deserted and abandoned his said wife, Elizabeth, and absconded from his usual place of abode, and thereafter until the year 1924, continuously absented and secreted himself, so that his said wife, Elizabeth, never learned of his whereabouts.

"2. That thereafter, on or about the ...... day of ......, 189.., the said Elizabeth Davis Bealmear was lawfully divorced from the said Alfred L. Bealmear, and that thereafter, on or about the ...... day of ...... 189.., she was lawfully married to one C. J. Baxter, with whom she continued to live as his wife until her death in the year 1922.

"3. That during all that time the said Elizabeth Davis Bealmear Baxter, the mother of this plaintiff, concealed from this plaintiff the name of his true father, and caused and procured this plaintiff to use the name of Russell O. Baxter; that during all such time this plaintiff assumed and believed that he was the son of the said C. J. Baxter, born of said Baxter's marriage with his mother; that this plaintiff was never informed and did not know of his mother's prior marriage to the said Alfred L. Bealmear.

"4. That in consequence of the premises aforesaid, this plaintiff did at all times, until the year 1924, use the name Russell O. Baxter, was married under the name of Russell O. Baxter, and had the birth of his children thereafter registered under such name, and at all times understood and believed that his name was Baxter, and at no time had any knowledge of the existence or relationship or whereabouts of the said Alfred L. Bealmear.

"5. That in the year 1924 plaintiff was located and discovered by his father, the said Alfred L. Bealmear, and the identity of his father was confirmed and established for him at that time for the first time; that the said Alfred L. Bealmear then and there revealed to this plaintiff his relationship to plaintiff as his father, and recognized and declared this plaintiff to be his true and lawful son, and afterwards in the year 1926 then and there represented and stated to this plaintiff that if this plaintiff would change his surname from Baxter to Bealmear, and otherwise treat and regard the said Alfred L. Bealmear as his true and lawful father, he, the said Alfred L. Bealmear, would make a will, and at his death, would devise and bequeath to him all of his property of every kind and description and make and recognize him as his sole and only heir.

"6. That in reliance upon the representations and promise of the said Alfred L. Bealmear, and by way of accepting the offer made to him by his said father, this plaintiff did then and there change his sur-

name from Baxter to Bealmear, and did accept and recognize the said Alfred L. Bealmear as his true and lawful father, and did then and at all times thereafter treat the said Alfred L. Bealmear with filial affection and regard, and in all matters did fully and completely accept the aforesaid offer of the said Alfred L. Bealmear and did fully and scrupulously perform said contract on his part.

"7. That said Alfred L. Bealmear for the ensuing twenty-three years did at all times treat and recognize this plaintiff as his lawful son, and did regard him with paternal affection, and did repeatedly state and represent to this plaintiff that he had made a will, and that upon his death, by virtue of the provisions of such will in his behalf made, this plaintiff would be the recipient of all of said Alfred L. Bealmear's property and estate, in virtue of his relationship as son to the said Alfred L. Bealmear and because of his full compliance with the terms of the offer so made to him by the said Alfred L. Bealmear.

"8. That thereafter, during the year 1945 and 1949, the said Alfred L. Bealmear failed in physical and mental health, and became aged and infirm in mind and body, and because of such mental infirmity suffered from the mental aberration and insane delusion that this plaintiff was not his son, and so came to profess hatred and contempt for this plaintiff, and finally, as a result of such delusion and infirmity, and because of the undue influence upon his feeble mind of others interested in obtaining his estate, came at last to make a purported will wherein this plaintiff was disinherited and cut out of any share whatsoever in his father's estate; that the said Alfred L. Bealmear died on or about the 10th day of August, 1949, without leaving a will devising and bequeathing his entire property and estate to this plaintiff, and without having fulfilled his agreement to do so, but breached said agreement by leaving a purported will wherein this plaintiff was disinherited and denied any share in his estate.

"9. Plaintiff states that, having on his part fulfilled said contract and agreement in each and every particular, according to the offer and desire of the said Alfred L. Bealmear, as aforesaid, he is in equity and good conscience entitled to have said contract enforced against the heirs and beneficiaries named in the purpoted will of the said Alfred L. Bealmear, deceased, to-wit: against the defendants herein and against the estate of the said Alfred L. Bealmear, deceased, and is entitled to have all of the property, effects and estate of the said Alfred L. Bealmear adjudged and decreed to be the property of this plaintiff, and is entitled to have said contract specifically performed, and that for his relief he has no adequate remedy at law.

"Wherefore, plaintiff prays the court to decree specific performance of said contract, and to decree that all of the property and estate of the said Alfred L. Bealmear, deceased, be delivered over by the defendants to this plaintiff, as the sole beneficiary and equitable owner thereof".

■■ In passing upon a motion to dismiss a petition for failure to state a claim upon which relief can be granted, all facts well pleaded must be taken as true and all inferences which may be fairly and reasonably drawn from the allegations of the pleading are admitted and must be considered. State ex rel. Davis v. Newton, Mo. App., 172 S.W.2d 872; Lightfoot v. Jennings, Mo.Sup., 254 S.W.2d 596, 600; Silverforb v. Bank of Nashua, 233 Mo.App. 1239, 128 S.W.2d 1070; Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 149, 227 S.W.2d 708, 711. However, in the last-cited case the court pointed out that "Neither conclusions of law nor the conclusions of the pleader on the facts are admitted by a general demurrer" or motion to dismiss filed under our new civil procedure code, Section 506.010 RSMo 1949, V.A.M.S.

Defendants first contend that the petition is defective because it does not allege the nature and characteristics of the property to be conveyed, i. e., that the property is *real estate* or is *personal property which is unique, rare* or *incapable of being reproduced by money damages.* The only allegation descriptive of the property is that de-

ceased agreed to make a will devising to plaintiff "all of his (deceased's) property of every kind and description * * *". It is conceded that deceased owned only personal property at time of his death. The question is: Should the petition specifically describe the personalty? We think not.

Defendants cite Kocurek v. Matychowiak, Mo.App., 185 S.W. 740. That was a suit for specific performance of a contract for sale, at an agreed price, of a saloon and restaurant, all represented by personal property. The court held that the petition did not state a cause of action in equity because plaintiff had an adequate remedy at law for damages. However, the court quoted with approval the general rule as announced in Corbin v. Tracy, 34 Conn. 325, 328, and Telegraphone Corp. v. Canadian Telegraphone Co., 103 Me. 444, 69 A. 767, as follows [185 S.W. 742]: "The jurisdiction, therefore, of a court of equity does not proceed upon any distinction between real estate and personal estate, but upon the ground that damages at law may not, in the particular case, afford a complete remedy. * * * When the remedy at law is not full and complete, and when the effect of the breach cannot be known with any exactness, either because the effect will show itself only after a long time, or for any other reason, courts of equity will enforce contracts in relation to personalty." After reviewing many other authorities the court, in the Kocurek case, said: "Recognizing the general rule as we have stated it above, that a court of equity will not decree specific performance of a contract relating to personal property for the reasons stated, it is said that in order to obtain the aid of a court of equity to enforce the contract as to personal property, 'the plaintiff must show some good reason in equity and good conscience to take the case out of the general rule. He must allege some element or feature of the contract, or in the conduct of the defendant, to show that the relief at law would not be adequate. He may show that in case the contract is not specifically performed his damages will be irreparable, or he may show that the measure of damages resulting from the non-performance of

the contract is uncertain or difficult of ascertainment.' "

In Pomeroy's Specific Performance of Contracts, 3d Ed., p. 490, the author announces the general rule relative to enforcement of contracts to make a will as follows: "Court of equity will, under special circumstances, enforce a contract to make a will or to make a certain testamentary disposition; and this may be done even when the agreement was parol, where in reliance upon the contract the promisee has changed his condition and relations, so that a refusal to complete the agreement would be a fraud upon him. The relief is granted, not by ordering a will to be made, but by regarding the property in the hands of the heirs, devisees, assignees, or representatives of the deceased promisor, as impressed with a trust in favor of the plaintiff, and by compelling defendant, who must of course belong to some one of these classes of persons, to make such a disposition of the property as will carry out the intent of the agreement". See the following Missouri cases which treat this doctrine under various circumstances: Wright v. Tinsley, 30 Mo. 389; Gupton v. Gupton, 47 Mo. 37; Sutton v. Hayden, 62 Mo. 101; Sportsman v. Halstead, 347 Mo. 286, 147 S.W.2d 447; Smith v. Lore, 325 Mo. 282, 29 S.W.2d 91; Signaigo v. Signaigo, Mo.Sup., 205 S.W. 23; Burnett v. Hudson, Mo.Sup., 228 S.W. 462; Buck v. Meyer, 195 Mo.App. 287, 190 S.W. 997; Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024.

In 81 C.J.S., Specific Performance, § 133, page 698, it is said: "In an action to enforce an agreement to make a will and devise property to plaintiff the compliant must show either by direct averment or from a description of the character of the services rendered that a money payment would not furnish adequate compensation to plaintiff."

Without going into a detailed analysis of the petition we are convinced that from all the peculiar facts alleged it is apparent that plaintiff does not have an adequate remedy at law and the mere fact that the deceased left only personal property,

which was not specifically described in the petition, would not prevent a suit in equity to enforce the alleged contract.

Most of the cases cited in this opinion hold that a contract of this kind is not within the statute of frauds and we need not belabor that question.

█ The next contention is that the petition did not allege that plaintiff's performance was referable *alone* to the making of the contract. The leading case on the requirements for specific performance of an oral contract of a deceased is Forrister v. Sullivan, 231 Mo. 345, 373, 132 S.W. 722, 730. Among the essential elements enumerated in that opinion is that "The acts relied on to show performance must in their nature be referable alone to the very contract sought to be performed; * * *. In a word, the acts relied on to show performance must point unerringly to the contract in suit and to none other." We think the petition meets that rule. It is alleged that deceased proposed to plaintiff that if he would do certain things deceased would make a will bequeathing all his property to plaintiff; and that in reliance upon such promise and by way of accepting the offer made by deceased plaintiff complied with and fulfilled the conditions required of him. When all the allegations of the petition are considered we think they point unerringly to the contract sought to be enforced. See the quotation from Sportsman v. Halstead in the next paragraph.

█ It is also contended that the petition is defective because it does not describe the "property" sought; that it does not allege that deceased owned the "property" when the alleged contract was made or at any time before his death; nor that defendants, or either of them, at any time had any title to or interest in said "property". Briefly stated, the petition alleged that deceased agreed that if plaintiff would do certain things he (deceased) "would make a will, and at his death, would devise and bequeath to him (plaintiff) all of his (deceased's) property of every kind and description and make and recognize him as his sole and only heir". It is conceded

there is no real estate involved, therefore no need for specific description of land, and there is no claim for specific personal property because of its peculiar intrinsic value, consequently no need to specifically describe a particular item of personalty. The rule applicable here is well stated in Sportsman v. Halstead, supra, 147 S.W.2d at page 452: "The contract pleaded was that respondents should have and receive whatever property the deceased might leave at this death, if they would live with him, take care of him and administer to his physical wants and needs in sickness and in health so long as he should live. Without any doubt these pleaded requirements as to what the respondents should do were clear and definite. The obligation on his part expressed in the contract, that respondents should have and receive whatever property he might leave at his death, also is sufficiently clear. As said in the Lore case, supra, 325 Mo. loc. cit. 291(I), 29 S.W.2d loc.cit. 95(1), 'to be definite it does not always follow that a contract must be detailed.' The clause meant, as it says, that the respondents should receive whatever property the deceased might leave at his death, not some specific property and not the property he owned when the contract was made (unless, of course, he owned it when he died), Walker v. Bohannan, supra, 243 Mo. loc. cit. 138, 139, 147 S.W. loc. cit. 1029, 1030."

Defendants cite Heron v. Peisch, 240 Mo. 221, 144 S.W. 413, and Feigenspan v. Pence, 350 Mo. 821, 168 S.W.2d 1074. In the Heron case the court cites Sutton v. Hayden, 62 Mo. loc. cit. 115. But that case clearly distinguishes the rule applicable in ordinary proceedings for specific performance from the theory pleaded in the instant case. The court said, 62 Mo. at page 115: "Another mark of distinction is to be observed between this case and ordinary proceedings for specific performance. In those cases, the precise property intended to be conveyed must be alleged and proven, while in cases like the present, it is sufficient to show a valid agreement to convey whatever property may remain at the death of the party contracting to convey. So that authorities cited in behalf of defendants, though clearly applicable to cases where

specific performance is asked as to a particular tract of land, as having been expressly contracted for, have no application here". There is no merit in this contention of defendants.

▇ Defendants' last contention is that the petition is defective because it appears on the face of the pleading that there is no mutuality of remedies. In support of this proposition it is argued that the contract required plaintiff to change his surname from "Baxter to Bealmear", and for plaintiff to "fully perform his side of the alleged contract the plaintiff must use the name 'Bealmear' for the rest of his life" and that the court could not make or enforce such an order. The petition is not subject to such a strained construction. The question of mutuality of remedies in suits for specific performance of contracts of the kind here involved is fully discussed in Sutton v. Hayden, supra, which holds that if one party fully performs his part of the contract there need not be mutuality of remedies at the time the contract is made.

The court said, 62 Mo. at page 114: "But after a contract has been fully performed and acquiesced in, as in the present instance; after one contracting party has received all the anticipated benefits arising from a faithful performance, it must be apparent that it would be altogether inequitable to permit the heirs of such party at this late period, when the law can afford *no* adequate redress, to raise any objection on the score of mutuality, even were such objection originally tenable." See, also, Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014.

We conclude that the petition states a good cause of action and that the court erred in dismissing it. We are not now confronted with the question of the quantum of proof necessary to sustain plaintiff's claim.

The judgment is reversed and the cause is remanded.

All concur.